FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

2014 OCT 21  P 5: 03

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ACME BILLING COMPANY
800 Executive Drive
Oviedo, Florida 32765,

    Plaintiff,

v.

JOHN DOE,

    Defendant.

Civil Action No. 1:14-cv-1379
20/TRJ.

In re:

| | | |
|---|---|---|
| AIJ.COM | FJD.COM | HBU.COM |
| HIE.COM | IIW.COM | PWP.COM |
| SJS.COM | XJN.COM | XPE.COM |
| GY.NET | 4213.COM | 7417.COM |
| 7204.COM | 8674.COM | |

## VERIFIED COMPLAINT

Plaintiff Acme Billing Company, by counsel, alleges as follows for its Complaint against

Defendants:

### NATURE OF THE SUIT

1.    This is an action for violation of the Anticybersquatting Consumer Protection Act,

15 U.S.C. § 1125(d), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.[1]

2.    Acme Billing Company ("Acme Billing") seeks injunctive and other equitable

relief as a result of the actions of a person or persons of unknown identity who gained

---

[1] Plaintiff's claim under the Anticybersquatting Consumer Protection Act is asserted pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I) and, pursuant to 15 U.S.C. § 1125(d)(3) and (4), Plaintiff asserts in the alternative its claim under the Computer Fraud and Abuse Act.

unauthorized access to Acme Billing's domain name management account on a protected computer, transferred control of the Defendant domain names from Acme Billing's account, and thereby disabled Acme Billing's associated e-commerce websites causing irreparably injury to Acme Billing.

## PARTIES

3.      Acme Billing is a corporation organized and existing under the laws of Florida with a principal business address of 800 Executive Drive, Oviedo, Florida 32765.   Until on or about August 4, 2014, Acme Billing was the registrant of the Defendant domain names and used the domain names to operate e-commerce websites.  Acme Billing was, and is, the rightful owner of the Defendant domain names.

4.      HIE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "songyu min" of "pudong donglulu 2000 nong 4-901, shang hai shang hai 201206 China."  A copy of the current domain name registration record for hie.com is attached as Exhibit A.

5.      AIJ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "shenzhouyibai" of "guangdonghuizhou, Huizhoushi, Guangdong 516000 China."  A copy of the current domain name registration record for aij.com is attached as Exhibit B.

6.      7204.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "shenzhouyibai" of "guangdonghuizhou, Huizhoushi, Guangdong 516000 China."  A copy of the current domain name registration record for 7417.com is attached as Exhibit C.

7.      FJD.COM is an Internet domain name which, according to records in the WHOIS

2

database of domain name registrations, is currently registered in the name of "MillerCHOU" of "No.7 DaQiao Southeast Road, nan jing shi jiang su 210001 China." A copy of the current domain name registration record for fjd.com is attached as Exhibit D.

8. XJN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "MillerCHOU" of "No.7 DaQiao Southeast Road, nan jing shi jiang su 210001 China." A copy of the current domain name registration record for xjn.com is attached as Exhibit E.

9. IIW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." A copy of the current domain name registration record for iiw.com is attached as Exhibit F.

10. PWP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." A copy of the current domain name registration record for pwp.com is attached as Exhibit G.

11. XPE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." A copy of the current domain name registration record for xpe.com is attached as Exhibit H.

12. GY.NET is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." A copy of the current domain name registration record for gy.net is attached as Exhibit I.

13.     4213.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wanghua" of "jin san da dao, Ningboshi Zhejiang 362400 China." A copy of the current domain name registration record for 4213.com is attached as Exhibit J.

14.     7417.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wanghua" of "jin san da dao, Ningboshi Zhejiang 362400 China." A copy of the current domain name registration record for 7417.com is attached as Exhibit K.

15.     8674.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wangsushu" of "tianjinshijinghaixian, tian jin tian jin 300000." A copy of the current domain name registration record for 7417.com is attached as Exhibit L.

16.     SJS.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Guodajiang" of "ShangHai Beijing eastRoad668 G550, shang hai shang hai 200000 China." A copy of the current domain name registration record for sjs.com is attached as Exhibit M.

17.     HBU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "zhen zhu wan ruan jian yuan, Xiamenshi Fujian 361000 China." A copy of the current domain name registration record for hbu.com is attached as Exhibit N.

18.     Defendant John Doe is a person or persons of unknown identity located in China that gained unauthorized access to Acme Billing's domain name management account and transferred control of the Defendant domain names away from Acme Billing.

4

19.     Upon information and belief, based upon Acme Billing's research and due diligence, the addresses presently listed in the domain name registration records for the Defendant domain names are fictitious and do not identify actual addresses within China.

20.     Upon information and belief, based upon Acme Billing's research and due diligence, the names presently listed as the registrants of the Defendant domain names—"songyu min," "shenzhouyibai," "MillerCHOU," "liuming," "wanghua," "wangsushu," and "Guodajiang"—are fictitious names and are aliases for John Doe.

21.     Upon information and belief, "Xiamen eName Network Co., Ltd." a/k/a "eName Network Co., Ltd." is the name of the domain name registrar to which John Doe transferred the Defendant domain names without authorization, and is the current registrar for the Defendant domain names.

## JURISDICTION, VENUE AND JOINDER

22.     This action arises out of John Doe's violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

23.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§1331 and 1338(a), and has *in rem* jurisdiction over the Defendant domain names pursuant to 15 U.S.C. § 1125(d)(2)(A).

24.     Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) in that the .COM and .NET domain name registry, VeriSign, Inc., is situated in this judicial district and the Defendant domain names are all .COM and .NET domain names that are located in the district.

25.     John Doe directed the acts complained of herein toward the district and utilized instrumentalities in the district in that John Doe gained unauthorized access to Acme Billing's

domain name management account and associated computer records and thereafter, without authorization, caused the domain name registration records maintained by VeriSign, Inc. in the district for the Defendant domain names to be altered so as to transfer control of the Defendant domain names away from Acme Billing.

26.     Upon information and belief, the names identified as the current registrants of the Defendant domain names are fictitious and the addresses identified in domain name registrations are fictitious.  Therefore, Acme Billing through due diligence was not able to find a person who would have been a defendant in this action and *in rem* jurisdiction over the Defendant domain names is proper pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I).

27.     Acme Billing is providing notice, concurrently with the filing of this complaint, to the Defendants of its intent to proceed *in rem* pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I)(aa).

28.     Acme Billing's claim in the alternative for violation of the Computer Fraud and Abuse Act, and the Court's jurisdiction over the alternative claim, are proper pursuant to 15 U.S.C. § 1125(d)(3) and (4).

29.     Joinder of the Defendant domain names is proper under Fed. R. Civ. P. 20(a)(2) in that the claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendant domain names.

## ACME BILLING'S RIGHTS

30.     Acme Billing is an e-commerce company that provides services and products to consumers through a network of Internet domain names and associated websites.

31.     Acme Billing uses its Internet domain names and e-commerce websites to sell products such as handbags, watches, shoes, writing instruments, crystal, sunglasses, and luxury accessories.

6

32.     Acme Billing also uses it Internet domain names and e-commerce websites to provide a wide range of useful information, links to other sites, and other online services in the fields of real estate, travel, shopping, lifestyle, retail services, and videos.

33.     Acme Billing has been in business for over five years and was originally a real estate company based in Florida. Acme Billing has since expanded into the online retail and e-commerce business and operates sites such as www.nyg.com and www.luxstyle4u.com. As Acme Billing has grown, it has purchased numerous domain names such as the Defendant domain names that are very desirable and meet the company's goals for use in the provision of e-commerce websites and information pages.

34.     Acme Billing often uses three-letter and four-number domain names as initialisms and acronyms for its products and services, and as the trademark names of its websites, because such letter and number strings are the subject of frequent Internet searches by consumers and are therefore valuable as e-commerce site names.

35.     Until on or about August 4, 2014, Acme Billing was the named registrant of the HIE.com domain name and used the HIE.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of user generated audio and visual content. A copy of an archived domain name registration record showing Acme Billing as the registrant of HIE.com is attached as Exhibit O.

36.     Acme Billing used the HIE.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view HIE.com as a symbol of origin, and consumers came to identify HIE.com as a source indicator.

37.     Acme Billing used the HIE.com domain name in U.S. Commerce in association

7

with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the HIE.com domain name.

38.     John Doe's unauthorized transfer and subsequent misuse of the HIE.com domain name further demonstrates that the HIE.com mark is entitled to trademark protection.

39.     The HIE mark is also registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under registration number 3899615. *See* Exhibit P.

40.     Acme Billing's federal registration for the HIE mark is *prima facie* evidence of the validity of the mark, of Acme Billing's ownership of the mark, and of Acme Billing's exclusive right to use the mark in U.S. commerce.

41.     Until on or about August 4, 2014, Acme Billing was the named registrant of the AIJ.com domain name and used the AIJ.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of artificial intelligence. A copy of an archived domain name registration record showing Acme Billing as the registrant of AIJ.com is attached as Exhibit Q.

42.     Acme Billing used the AIJ.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view AIJ.com as a symbol of origin, and consumers came to identify AIJ.com as a source indicator.

43.     Acme Billing used the AIJ.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the AIJ.com domain name.

44.     John Doe's unauthorized transfer and subsequent misuse of the AIJ.com domain name further demonstrates that the AIJ.com mark is entitled to trademark protection.

45.     Until on or about August 4, 2014, Acme Billing was the named registrant of the FJD.com domain name and used the FJD.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of Fiji diving.  A copy of an archived domain name registration record showing Acme Billing as the registrant of FJD.com is attached as Exhibit R.

46.     Acme Billing used the FJD.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view FJD.com as a symbol of origin, and consumers came to identify FJD.com as a source indicator.

47.     Acme Billing used the FJD.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the FJD.com domain name.

48.     John Doe's unauthorized transfer and subsequent misuse of the FJD.com domain name further demonstrates that the FJD.com mark is entitled to trademark protection.

49.     Until on or about August 4, 2014, Acme Billing was the named registrant of the HBU.com domain name and used the HBU.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of retail hand bags.  A copy of an archived domain name registration record showing Acme Billing as the registrant of HBU.com is attached as Exhibit S.

50.     Acme Billing used the HBU.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view HBU.com as a symbol of origin, and consumers came to identify HBU.com as a source indicator.

51.     Acme Billing used the HBU.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the HBU.com domain name.

52.     John Doe's unauthorized transfer and subsequent misuse of the HBU.com domain name further demonstrates that the HBU.com mark is entitled to trademark protection.

53.     Until on or about August 4, 2014, Acme Billing was the named registrant of the IIW.com domain name and used the IIW.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of iPhone and/or iMac repair.  A copy of an archived domain name registration record showing Acme Billing as the registrant of IIW.com is attached as Exhibit T.

54.     Acme Billing used the IIW.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view IIW.com as a symbol of origin, and consumers came to identify IIW.com as a source indicator.

55.     Acme Billing used the IIW.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the IIW.com domain name.

56.     John Doe's unauthorized transfer and subsequent misuse of the IIW.com domain name further demonstrates that the IIW.com mark is entitled to trademark protection.

57.     Until on or about August 4, 2014, Acme Billing was the named registrant of the PWP.com domain name and used the PWP.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of password protection.  A copy of an archived domain name registration record showing Acme Billing as the registrant of

PWP.com is attached as Exhibit U.

58.     Acme Billing used the PWP.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view PWP.com as a symbol of origin, and consumers came to identify PWP.com as a source indicator.

59.     Acme Billing used the PWP.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the PWP.com domain name.

60.     John Doe's unauthorized transfer and subsequent misuse of the PWP.com domain name further demonstrates that the PWP.com mark is entitled to trademark protection.

61.     Until on or about August 4, 2014, Acme Billing was the named registrant of the SJS.com domain name and used the SJS.com domain name to provide visitors with useful information, links to other sites, and other online services related to "simple Java" servers for computers. A copy of an archived domain name registration record showing Acme Billing as the registrant of SJS.com is attached as Exhibit V.

62.     Acme Billing used the SJS.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view SJS.com as a symbol of origin, and consumers came to identify SJS.com as a source indicator.

63.     Acme Billing used the SJS.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the SJS.com domain name.

64.     John Doe's unauthorized transfer and subsequent misuse of the SJS.com domain

name further demonstrates that the SJS.com mark is entitled to trademark protection.

65.     Until on or about August 4, 2014, Acme Billing was the named registrant of the XJN.com domain name and used the XJN.com domain name to provide visitors with useful information, links to other sites, and other online services related to a journal of nutrition.  A copy of an archived domain name registration record showing Acme Billing as the registrant of XJN.com is attached as Exhibit W.

66.     Acme Billing used the XJN.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view XJN.com as a symbol of origin, and consumers came to identify XJN.com as a source indicator.

67.     Acme Billing used the XJN.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the XJN.com domain name.

68.     John Doe's unauthorized transfer and subsequent misuse of the XJN.com domain name further demonstrates that the XJN.com mark is entitled to trademark protection.

69.     Until on or about August 4, 2014, Acme Billing was the named registrant of the XPE.com domain name and used the XPE.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of physical education.  A copy of an archived domain name registration record showing Acme Billing as the registrant of XPE.com is attached as Exhibit X.

70.     Acme Billing used the XPE.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view XPE.com as a symbol of origin, and consumers came to

identify XPE.com as a source indicator.

71.     Acme Billing used the XPE.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the XPE.com domain name.

72.     John Doe's unauthorized transfer and subsequent misuse of the XPE.com domain name further demonstrates that the XPE.com mark is entitled to trademark protection.

73.     Until on or about August 4, 2014, Acme Billing was the named registrant of the GY.net domain name and used the GY.net domain name to provide visitors with useful information, links to other sites, and other online services in the field of genealogy. A copy of an archived domain name registration record showing Acme Billing as the registrant of GY.net is attached as Exhibit Y.

74.     Acme Billing used the GY.net domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view GY.net as a symbol of origin, and consumers came to identify GY.net as a source indicator.

75.     Acme Billing used the GY.net domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the GY.net domain name.

76.     John Doe's unauthorized transfer and subsequent misuse of the GY.net domain name further demonstrates that the GY.net mark is entitled to trademark protection.

77.     Until on or about August 4, 2014, Acme Billing was the named registrant of the 4213.com domain name and used the 4213.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of trucking. A copy of an

archived domain name registration record showing Acme Billing as the registrant of 4213.com is attached as Exhibit Z.

78.     Acme Billing used the 4213.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view 4213.com as a symbol of origin, and consumers came to identify 4213.com as a source indicator.

79.     Acme Billing used the 4213.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the 4213.com domain name.

80.     John Doe's unauthorized transfer and subsequent misuse of the 4213.com domain name further demonstrates that the 4213.com mark is entitled to trademark protection.

81.     Until on or about August 4, 2014, Acme Billing was the named registrant of the 7417.com domain name and used the 7417.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of protein coding.  A copy of an archived domain name registration record showing Acme Billing as the registrant of 7417.com is attached as Exhibit AA.

82.     Acme Billing used the 7417.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view 7417.com as a symbol of origin, and consumers came to identify 7417.com as a source indicator.

83.     Acme Billing used the 7417.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the 7417.com domain name.

84.     John Doe's unauthorized transfer and subsequent misuse of the 7417.com domain name further demonstrates that the 7417.com mark is entitled to trademark protection.

85.     Until on or about August 4, 2014, Acme Billing was the named registrant of the 7204.com domain name and used the 7204.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of gene coding. A copy of an archived domain name registration record showing Acme Billing as the registrant of 7204.com is attached as Exhibit AB.

86.     Acme Billing used the 7204.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual impression that viewers would view 7204.com as a symbol of origin, and consumers came to identify 7204.com as a source indicator.

87.     Acme Billing used the 7204.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the 7204.com domain name.

88.     John Doe's unauthorized transfer and subsequent misuse of the 7204.com domain name further demonstrates that the 7204.com mark is entitled to trademark protection.

89.     Until on or about August 4, 2014, Acme Billing was the named registrant of the 8674.com domain name and used the 8674.com domain name to provide visitors with useful information, links to other sites, and other online services in the field of gene coding. A copy of an archived domain name registration record showing Acme Billing as the registrant of 8674.com is attached as Exhibit AC.

90.     Acme Billing used the 8674.com domain name as more than an Internet address. Acme Billing used and promoted the domain name in a manner that made such a visual

impression that viewers would view 8674.com as a symbol of origin, and consumers came to identify 8674.com as a source indicator.

91.    Acme Billing used the 8674.com domain name in U.S. Commerce in association with the provision of services to Internet consumers and Acme Billing is entitled to common law trademark protection in the 8674.com domain name.

92.    John Doe's unauthorized transfer and subsequent misuse of the 8674.com domain name further demonstrates that the 8674.com mark is entitled to trademark protection.

## UNLAWFUL TRANSFER AND REGISTRATION OF THE DOMAIN NAMES

93.    Computer hacking and theft of intellectual property by persons based in China has become such a significant problem for American businesses that the director of the FBI stated in an October 5, 2014 interview with CBS that "Chinese hackers target[] the intellectual property of U.S. companies on a daily basis, costing the U.S. economy billions of dollars each year."

94.    The United States government and federal law enforcement agencies regularly provide warnings of such attacks to American businesses. For example, the FBI recently issued a "flash" alert to a wide range of U.S. businesses warning of the actions of "a group of Chinese Government affiliated cyber actors who routinely steal high-value information from U.S. commercial and government networks through cyber espionage."

95.    The Associated Press reported that a 2013 survey by the National Small Business association found that 44% of small businesses like Acme Billing had been the subject of computer hacking.

96.    Acme Billing's claims in the present case involve one of the most recent iterations of such computer hacking actions—colloquially referred to as "domain name theft." The Huffington Post recently reported that the FBI received 26 separate reports of domain name theft

over the last year even though the majority of such thefts go unreported.

97.     This Court recently granted a preliminary injunction involving another recent instance of domain name theft under very similar circumstances in *Jin v. Doe*, 1:14-cv-01120-LO-TRJ [Doc. 6]. Based on the allegations set forth in the *Jin v. Doe* complaint and motion for preliminary injunction, the John Doe defendant in *Jin v. Doe* may be the same person or person identified as the John Doe defendant in the present action.

98.     Acme Billing maintains a domain name management account with GoDaddy for control and management of its domain names that are used to display e-commerce websites.

99.     Acme Billing's domain name management account with GoDaddy is maintained on a protected computer and access to the account should be restricted to only those persons that possess Acme Billing's user name and password.

100.    On or about August 6, 2014 Acme Billing learned that John Doe had gained unauthorized access to its domain name management account and altered the domain name registration records for 35 domain names owned and used by Acme Billing.

101.    Acme Billing immediately alerted GoDaddy to the unauthorized changes to certain of its domain name registrations.

102.    GoDaddy advised Acme Billing that the 35 domain names had been transferred to another domain name management account with GoDaddy and then transferred from this GoDaddy account to a domain name registrar based in China--eName Technology Co., Ltd.

103.    When the 35 domain names were transferred by John Doe without authorization, the domain name registrant information was changed and the technical settings for the domain names were changed thereby disabling Acme Billing's associated e-commerce websites.

104.    Upon learning of the unauthorized transfer of the domain names, Acme Billing

went to great lengths to provide GoDaddy with documentation and information evidencing Acme Billing's rightful ownership of the 35 domain names.

105.    Based on Acme Billing's rightful ownership of the domain names, GoDaddy was able to retrieve and return to Acme Billing's control 21 of the 35 stolen domain names, but has advised Acme Billing that the Chinese domain name registrar has refused to return the 14 Defendant domain names.

106.    John Doe is now offering the 14 Defendant domain names for sale.

107.    The registration and use of the Defendant domain names by John Doe is without authorization from Acme Billing.

108.    The Defendant domain names do not reflect the trademark or intellectual property rights of John Doe.

109.    The Defendant domain names do not reflect the legal name of the current registrant(s) of the domain names.

110.    The current registrant(s) of the Defendant domain names has not engaged in bona fide noncommercial or fair use of Acme Billing's trademarks in a website accessible under the domain names.

111.    John Doe is offering to sell the Defendant domain names to Acme Billing or any third party for financial gain without having used, or having an intent to use, the domain names in the bona fide offering of any goods or services.

112.    John Doe provided material and misleading false contact information in the domain name registrations when changing the registrant for the Defendant domain names from Acme Billing to the current registrant(s).

113.    John Doe transferred the Defendant domain names without authorization from

Acme Billing and thereby registered multiple domain names which John Doe knew were identical to, and reflective of, Acme Billing's trademarks.

## FIRST CLAIM FOR RELIEF

### Violation of the Federal Anticybersquatting Consumer Protection Act

114.    Acme Billing repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-113, as though fully set forth herein.

115.    Acme Billing's trademarks are famous and/or distinctive and were famous and/or distinctive prior to the time that John Doe transferred the Defendant domain names away from Acme Billing without authorization and thereby registered the Defendant domain names.

116.    The aforesaid acts by John Doe constitute registration, trafficking, or use of domain names that are identical to Acme Billing's trademarks, with bad faith intent to profit therefrom.

117.    Acme Billing, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(2)(A)(i)(I).

118.    The aforesaid acts by the registrant(s) of the domain names constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

119.    The aforesaid acts have caused, and are causing, great and irreparable harm to Acme Billing and the public. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Acme Billing is entitled to an order transferring the Defendant domain name registrations to Acme Billing.

## SECOND CLAIM FOR RELIEF

### Violation of the Computer Fraud & Abuse Act

120.    Acme Billing repeats and realleges each and every allegation set forth in the foregoing paragraphs 1-119, as though fully set forth herein.

121.    John Doe (a) knowingly and intentionally accessed Acme Billing's domain name management account on a protected computer without authorization and thereby obtained information from the protected computer in a transaction involving an interstate or foreign communication (18 U.S.C. § 1030(a)(2)(C)); (b) knowingly and with an intent to defraud accessed Acme Billing's domain name management account on a protected computer without authorization and obtained information from the computer, which John Doe used to further a fraud and obtain something of value (18 U.S.C. § 1030(a)(4)); and (c) intentionally accessed Acme Billing's domain name management account on a protected computer without authorization, and as a result of such conduct caused damage and loss (18 U.S.C. § 1030(a)(5)(C)).

122.    Acme Billing has suffered damages as a result of the conduct complained of herein and such conduct has caused a loss to Acme Billing during a one-year period aggregating at least $5,000.

123.    As a direct result of the actions complained of herein, Acme Billing has suffered and continues to suffer irreparable harm for which Acme Billing has no adequate remedy at law, and which will continue unless enjoined.

### PRAYER FOR RELIEF

WHEREFORE, Acme Billing respectfully requests of this Court:

1.    That judgment be entered in favor of Acme Billing on its claims for violation of

the Anticybersquatting Consumer Protection Act and the Computer Fraud and Abuse Act.

2. That the Court order the Defendant domain names be transferred to Acme Billing.

3. That any other domain names registered by the registrant(s) of the Defendant domain names that resemble or include Acme Billings trademarks be transferred to Acme Billing.

4. That the Court order an award of costs and reasonable attorney's fees incurred by Acme Billing in connection with this action pursuant to 15 U.S.C. § 1117(a); and

5. That the Court order an award to Acme Billing of such other and further relief as the Court may deem just and proper.

Dated: October 21, 2014       By: _____

Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (*for pro hac admission*)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com

*Counsel for Plaintiff*
*Acme Billing Company*

## VERIFICATION

I, Martin T. Krytus, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am a Director of Plaintiff Acme Billing Company and the facts contained in the foregoing verified complaint are true and correct.

_____
Martin T. Krytus

10-21-2014
_____
Date