**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

ACME BILLING COMPANY,

    Plaintiff,

v.

JOHN DOE,

    Defendant.

No. 1:14-cv-01379-LO-TRJ

In re:

| | | |
|---|---|---|
| AIJ.COM | FJD.COM | HBU.COM |
| HIE.COM | IIW.COM | PWP.COM |
| SJS.COM | XJN.COM | XPE.COM |
| GY.NET | 4213.COM | 7417.COM |
| 7204.COM | 8674.COM | |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF DEFAULT JUDGMENT</u>**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Acme Billing Company ("Plaintiff" or "Acme Billing"), by counsel, submits this Memorandum in Support of its Motion for Default Judgment transferring the domain names aij.com, hie.com, sjs.com, gy.net, 7204.com, fjd.com, iiw.com, xjn.com, 4213.com, 8674.com, hbu.com, pwp.com, xpe.com, and 7417.com (the "Domain Names") to Plaintiff,[1] and in support thereof states as follows:

---

[1] Nothing herein shall be construed to affect claims that Acme Billing may have against other persons or entities responsible for the loss of these domain names.

I. **INTRODUCTION**

Acme Billing has filed a Motion with this Court under Federal Rule of Civil Procedure 55(b)(2) for a default judgment transferring to it control of the Domain Names. Each of the Domain Names is identical to Plaintiff's trademarks, which were distinctive and/or famous at the time that the Domain Names were registered to the current registrant and which remain distinctive and famous today. Each of the Domain Names was registered and is being maintained and used by a registrant that lacks any rights or other legitimate interests in such Domain Names. Each of the Domain Names was registered in bad faith and/or is being used in bad faith without permission from Plaintiff.

By their default, the Domain Names have conceded the truth of the allegations of Plaintiff's Complaint for violations of the Anti-Cybersquatting Consumer Protection Act and the Computer Fraud and Abuse Act. There is no genuine issue of fact remaining in this suit, and default judgment should be entered against the Domain Names providing Acme Billing with the requested relief—transfer of the Domain Names to Acme Billing.

II. **FACTUAL BACKGROUND**

A. **Plaintiff Acme Billing and Its Trademark Rights**

Acme Billing Company is a corporation organized and existing under the laws of Florida with a principal business address of 800 Executive Drive, Oviedo, Florida 32765 (Compl. ¶ 3) (ECF. No. 1). Acme Billing has been in business for more than five years and provides services and products to consumers through a network of Internet domain names and associated websites. (*Id.* ¶¶ 30 & 33). Acme Billing uses its domain names and websites to sell products, to provide information, to provide links to other websites, and to provide online services in the fields of real estate, travel, shopping, lifestyle, retail services, and videos. (*Id.* ¶¶ 31 & 32).

Until on or about August 4, 2014, Acme Billing was the named registrant of the Domain Names. (*Id.* ¶¶ 35, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89). Acme Billing's HIE mark is registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under registration number 3899615. (*Id.* ¶ 39 & Ex. P). Acme Billing used the other Domain Names in U.S. commerce in association with the provision of products and services to Internet consumers and is therefore entitled to common law trademark protection in the trademarks that correspond to the Domain Names. (*Id.* ¶¶ 43, 47, 51, 55, 59, 63, 67, 71, 75, 79, 83, 87, 91).

### B. <u>Defendant Domain Names</u>

HIE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "songyu min" of "pudong donglulu 2000 nong 4-901, shang hai shang hai 201206 China." (Compl. ¶ 4 & Ex. A).

AIJ.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "shenzhouyibai" of "guangdonghuizhou, Huizhoushi, Guangdong 516000 China." (*Id.* ¶ 5 & Ex. B).

7204.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "shenzhouyibai" of "guangdonghuizhou, Huizhoushi, Guangdong 516000 China." (*Id.* ¶ 6 & Ex. C).

FJD.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "MillerCHOU" of "No.7 DaQiao Southeast Road, nan jing shi jiang su 210001 China." (*Id.* ¶ 7 & Ex. D).

XJN.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "MillerCHOU" of "No.7 DaQiao Southeast Road, nan jing shi jiang su 210001 China." (*Id.* ¶ 8 & Ex. E).

IIW.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." (*Id.* ¶ 9 & Ex. F).

PWP.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." (*Id.* ¶ 10 & Ex. G).

XPE.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." (*Id.* ¶ 11 & Ex. H).

GY.NET is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "liuming" of "wulidajie, Zunyishi Guizhou 563000 China." (*Id.* ¶ 12 & Ex. I).

4213.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wanghua" of "jin san da dao, Ningboshi Zhejiang 362400 China." (*Id.* ¶ 13 & Ex. J).

7417.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wanghua" of "jin san da dao, Ningboshi Zhejiang 362400 China." (*Id.* ¶ 14 & Ex. K).

8674.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "wangsushu" of "tianjinshijinghaixian, tian jin tian jin 300000." (*Id.* ¶ 15 & Ex. L).

SJS.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Guodajiang" of "ShangHai Beijing eastRoad668 G550, shang hai shang hai 200000 China." (*Id.* ¶ 16 & Ex. M).

HBU.COM is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered in the name of "Xiamen eName Network Co., Ltd." of "zhen zhu wan ruan jian yuan, Xiamenshi Fujian 361000 China." (*Id.* ¶ 17 & Ex. N).

As alleged in the complaint, the registrant names—songyu min, shenzhouyibai, MillerCHOU, liuming, wanghua, wangsushu, Guodajiang, and Xiamen eName Network Co, Ltd.—are fictitious names and are aliases for John Doe. (*Id.* ¶ 20). As further alleged in the complaint, the addresses identified in the Domain Name registrations are also fictitious. (*Id.* ¶ 26). John Doe is a person or persons of unknown identity located in China that gained unauthorized access to Acme Billing's domain name management account and transferred control of the Domain Names away from Acme Billing. (*Id.* ¶ 18). The use of the Plaintiff's trademarks within the Defendant Domain Names and/or associated websites is without authorization from Acme Billing. (*Id.* ¶ 21).

### C. The Instant Proceeding

Plaintiff filed this action against Defendant Domain Names on October 21, 2014. (*See* ECF No. 1). The Complaint seeks the transfer of the Domain Names to Acme Billing for violation of the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1), and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

Acme Billing provided the registrants of the Domain Name registrations with notice of its intent to proceed *in rem* in the United States District Court for the Eastern District of Virginia,

which included a copy of the Complaint. (*See* Declaration of David E. Weslow (Nov. 5, 2014) (ECF No. 5-1) ("Weslow Decl. 1") ¶ 6 & Attach. 1). The notices were sent to the postal and email addresses set forth in the registration records for the Domain Names. (*Id*.).

On November 5, 2014, Acme Billing filed a Motion for Service by Publication. (*See* ECF Nos. 4-6). On November 10, 2014, the Court granted Acme Billing's Motion and ordered Acme Billing to publish the Order providing notice to the Domain Names in *The Washington Times* once within fourteen (14) days after the entry of the Order. (*See* ECF No. 8). The Order further directed Acme Billing to file a declaration within twenty (20) days after the entry of the Order describing the steps that Acme Billing had taken to comply with the Order. (*Id*.). Acme Billing caused the Order of Service By Publication to be published in *The Washington Times* on November 14, 2014. (*See* Declaration of David E. Weslow (Nov. 20, 2014) (ECF No. 9-1) ("Weslow Decl. 2") ¶ 5 & Ex. A). Acme Billing filed its declaration describing compliance with the Order on November 20, 2014. (*See* ECF No. 9-1). On December 24, 2014, the Clerk entered a default against the Defendant Domain Names. (*See* ECF No. 11).

### III. ARGUMENT

#### A. This Court Has Jurisdiction to Enter Default Judgment Against the Domain Names.

This Court has jurisdiction to grant Plaintiff's motion and enter default judgment against the Domain Names because the Court has subject matter jurisdiction over this action, as well as *in rem* jurisdiction over the Domain Names. The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121(a) (all federal trademark actions), 28 U.S.C. §§ 1331 (federal question jurisdiction), and 1338(a) (any act of Congress relating to patents, copyrights, and trademarks). (Compl. ¶ 23).

This Court has *in rem* jurisdiction over the Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(I) because Acme Billing was not, through the exercise of due diligence, able to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1). (Compl. ¶ 26). Acme Billing both: (1) sent notice of the alleged violation and intent to proceed under the Acts to the registrants of the Domain Names at the postal and email addresses provided in the registration records for the Domain Names, (Weslow Decl. 1 ¶ 6 & Attach. 1); and (2) published notice of the action in *The Washington Times* as directed by the Court (*see* Weslow Decl. 2 ¶ 5). *In rem* jurisdiction and venue are proper in this district pursuant to 15 U.S.C. § 1125(d)(2)(C) because the .COM and .NET domain name registry, VeriSign, Inc. ("VeriSign"), is situated in this judicial district, and the Defendant Domain Names are all .COM or .NET domain names. (Compl. ¶ 24).

### B. The Clerk Appropriately Entered Defaults as to the Domain Names.

The Clerk of this Court enters a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). The Clerk's entry of default against Defendant John Doe and the Defendant Domain Names was required here because, as the docket reflects, the time for filing a responsive pleading had passed. Plaintiff's counsel provided notice of the alleged violations and Plaintiff's intent to proceed *in rem* in the United States District Court for the Eastern District of Virginia, which included a copy of the Complaint. (*See* Weslow Decl. 1 ¶ 6 & Attach. 1). The notices were sent to the postal and email addresses set forth in the registration records for the Domain Names. (*Id*.)

On November 5, 2014, Acme Billing filed a Motion for Service by Publication. (ECF Nos. 4-6). On November 10, 2014, the Court granted Acme Billing's Motion and ordered Acme

Billing to publish the Order providing notice to the Defendants in *The Washington Times* once within fourteen (14) days after the entry of the Order. (ECF No. 8). The Order further directed Acme Billing to file a declaration within twenty (20) days after the entry of the Order describing the steps that Acme Billing had taken to comply with the Order. (*Id*.). Acme Billing caused the Order of Service By Publication to be published in *The Washington Times* on November 14, 2014. (*See* Weslow Decl. 2 ¶ 5 & Ex. A). Acme Billing filed its declaration describing compliance with the Order on November 20, 2014. (ECF No. 9-1). The Defendants did not request, and the Court did not grant, any formal extension of the deadlines prescribed in the November 10, 2014 Order, and the Defendants have failed to answer or otherwise respond to Plaintiff's Complaint.

These facts, supported by the uncontroverted declarations filed in this action, clearly demonstrate that Defendant John Doe and the Defendant Domain Names (and anyone acting on their behalf) had constructive notice (if not actual notice) of this action, yet failed to enter an appearance or otherwise defend this action. Therefore, the Clerk appropriately entered default against the Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

    **C.**     <u>**Plaintiff Is Entitled to a Default Judgment Against the Defendants.**</u>

By failing to appear or otherwise defend against the Complaint, Defendants are deemed to have admitted every allegation therein, and the Court must only determine whether the Complaint properly states a claim for relief. Fed. R. Civ. P. 8(b)(6); *see also United Press Int'l, Inc. v. UPIphoto.com et al.*, No. 1:13-CV-807 TSE/TCB, at 8 (E.D. Va. Oct. 18, 2013), *adopted by* No. 1:13-CV-807 TSE/TCB (E.D. Va. Nov. 5, 2013). This Court should conclude that Defendants have admitted the well-pleaded allegations set forth in Plaintiff's Complaint that establish Plaintiff's entitlement to a transfer of the Domain Names. *See Consumer Source*

*Holding, Inc. v. Does 1-24*, No. 1:13-CV-1512 AJT/JFA, 2014 WL 2967942, at *5 (E.D. Va. July 1, 2014).

### 1. Violation of the Anti-Cybersquatting Consumer Protection Act

The ACPA provides that a person is liable to a trademark owner if that person has a bad-faith intent to profit from the trademark owner's mark and the person registers, traffics in, or uses a domain name that is identical or confusingly similar to or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(A); *see also Montblanc-Simplo Gmbh v. Montblancpensale.org*, 297 F.R.D. 242, 246 (E.D. Va. 2014) (adopting Report and Recommendation of Magistrate Judge Jones, Jr.). The Complaint pleads both that the Domain Names are identical to Acme Billing's distinctive and/or famous marks and that the registration of the Domain Names was in bad faith. (Compl. ¶ 116).

#### a. The Distinctiveness of Acme Billing's Marks.

Acme Billing's trademarks are distinctive and/or famous and were distinctive and/or famous prior to the time that John Doe transferred the Defendant Domain Names away from Acme Billing. 15 U.S.C. § 1125(d)(1)(B)(i)(IX). Acme Billing often uses three-letter and four-number domain names as initialisms and acronyms for its products and services, and as the trademark names of its websites. (Compl. ¶¶ 33-34). Acme Billing has used the Domain Names in U.S. commerce to provide consumers with services and products in fields such as real estate, travel, shopping, lifestyle, retail services, and videos. (*Id.* ¶¶ 30-32). Acme Billing's federal registration of the HIE.COM mark is *prima facie* evidence of the validity and distinctiveness of the mark. (*Id.* ¶ 40).

Acme Billing continuously and exclusively used the other Domain Names in U.S. commerce in association with the provision of products and services to Internet consumers and thus is entitled to common law trademark rights in the Domain Names. "At common law,

trademark ownership is acquired by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). The use of a trademark in a domain name is sufficient to create common law trademark rights if the trademark "is used to identify the source of goods and services." *See Tober v. APROV.COM*, No. 1:07-CV-1252 LMB/TCB, 2008 WL 4364221, at *2 (E.D. Va. Sept. 23, 2008). Here, Acme Billing used the Domain Names as more than an Internet address; rather, Acme Billing used and promoted the Domain Names in a manner that made such a visual impression that consumers would view the Domain Names as a symbol of origin, and consumers came to identify the Domain Names as a source indicator. (Compl. ¶¶ 35-92). This Court has found that continuous use of a domain name in the promotion of a business is sufficient to establish common law rights in a trademark. *See Lee v. Kremnev*, No. 1:14-CV-418 JCC/TRJ, at 7 (E.D. Va. Dec. 2, 2014); *Seitzman v. Lead Networks Domains Pvt., Ltd.*, 1:09-CV-01141 CMH/IDD, 2010 WL 4481776, at *6-*7 (E.D. Va. Sept. 24, 2010). Accordingly, Acme Billing is entitled to common law trademark rights in the Domain Names.

      b.    **<u>The Domain Names Are Confusingly Similar to the Acme Billing's Marks.</u>**

The Domain Names are confusingly similar to Acme Billing's trademarks pursuant to 15 U.S.C. § 1125(d)(1)(A)(ii)(I). Under the ACPA, courts look to the facial similarity of the domains to the marks to determine confusing similarity. *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) ("It is the challenged domain name and the plaintiff's mark which are to be compared."). The confusing similarity standard is satisfied when a domain name is virtually identical to the plaintiff's mark. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 663 (E.D. Va. 2006).

Here, however, John Doe transferred control of the Domain Names away from Acme Billing without authorization, so the Domain Names are identical to Acme Billing's trademarks. Thus, it is clear that the Domain Names are confusingly similar to Acme Billing's trademarks, because they are identical to Acme Billing's trademarks. Further, it is clear that the registrants possess a bad-faith intent to profit from the similarity of the Domain Names to Acme Billing's trademarks, as discussed below.

### c. The Registrants Acted in Bad Faith.

Under ACPA, courts may consider several non-determinative factors when determining bad faith, including a defendant's intellectual property rights in the domain name; the extent to which the name consists of the defendant's legal name; a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; the defendant's offer to transfer or sell the domain name to the mark owner for financial gain without having used the domain name in the bona fide offering of goods or services; the defendant's provision of misleading or false contact information when applying for registration of the domain name; and the defendant's registration or acquisition of multiple domain names which the defendant knows are identical or confusingly similar to the marks of others. 15 U.S.C. § 1125(d)(1)(B)(i)(I), (II), (IV), (VI), (VII), (VIII).

Here, the facts support a finding of bad faith. *First*, the registrants have no apparent intellectual property rights in the Domain Names, which are identical to Acme Billing's trademarks, and which were stolen from Acme Billing. Compl. ¶¶ 108, 116; 15 U.S.C. § 1125(d)(1)(B)(i)(I). Acme Billing provided notice of the alleged violations and its intent to proceed *in rem*, which included a copy of the Complaint. (*See* Weslow Decl. 1 ¶ 6 & Attach. 1). The notices were sent to the postal and email addresses set forth in the registration records for

the Domain Names. (*Id.*). Nevertheless, no one on behalf of the Domain Names has come forward to assert any rights in the Domain Names.

*Second*, the Domain Names do not appear to reflect the legal names of the registrants given that the Domain Names do not correspond to the registrant names and the registrant names appear to be fictitious. Compl. ¶¶ 26, 109; 15 U.S.C. § 1125(d)(1)(B)(i)(II).

*Third*, the registrants have not engaged in bona fide commercial or fair use of Acme Billing's trademarks in a site accessible under the Domain Names. Compl. ¶ 110; 15 U.S.C. § 1125(d)(1)(B)(i)(IV).

*Fourth*, the registrants now are offering to sell the Defendant Domain Names to Acme Billing for financial gain without having used, or having an intent to use, the Domain Names in the bona fide offering of goods or services. Compl. ¶¶ 106 & 111; 15 U.S.C. § 1125(d)(1)(B)(i)(VI).

*Fifth*, the registrants supplied false contact information when registering the Domain Names, thus further demonstrating a bad-faith intent to profit from Acme Billing's trademarks. Compl. ¶ 26, 112; 15 U.S.C. § 1125(d)(1)(B)(i)(VII).

*Finally*, the registrants transferred the Domain Names from Acme Billing without authorization and thereby registered multiple domain names known to be identical to, or reflective of, Acme Billing's trademarks. Compl. ¶ 113; 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

This court recently found bad faith under the ACPA in another domain name theft case. *Lee v. Kremnev*, No. 1:14-CV-418 JCC/TRJ, at 9 (E.D. Va. Dec. 2, 2014). In *Lee*, the plaintiff's domain name account was compromised, and his domain name was stolen. The court held that plaintiff had sufficiently alleged bad faith under the ACPA on the part of the registrant because the registrant had "fail[ed] to correct the fraudulent transfer," the "Registrant lacked any right or

12

legitimate interest in plaintiff's mark or domain name at the time of transfer," and the "Registrant's transfer of the domain name ha[d] prevented plaintiff from using and exercising control over his mark." *Id*. at 8-9. Similarly, here, John Doe lacked any legitimate right or interest in the Domain Names when it transferred the Domain Names from Acme Billing, it has failed to correct the fraudulent transfer, and it has prevented Acme Billing from exercising control over the Domain Names.

For all of these reasons, the pleaded facts support a finding of bad-faith registration of the Domain Names.

### 2. **Violation of the Computer Fraud and Abuse Act**

The CFAA prohibits computer fraud on protected computers. *See Consumer Source Holding, Inc.*, 2014 WL 2967942, at *7. Specifically, the CFAA penalizes a party that intentionally accesses a protected computer without authorization and thereby obtains information from a protected computer (18 U.S.C. § 1030(a)(2)(C)); knowingly and with an intent to defraud accesses a protected computer without authorization and thereby obtains anything of value which furthers the intended fraud (18 U.S.C. § 1030(a)(4)); or intentionally accesses a protected computer without authorization, and, as a result of such conduct, causes damage and loss (18 U.S.C. § 1030(a)(5)(C)).

Here, the pleaded facts support a finding that John Doe violated the CFAA. Acme Billing's domain name management account was maintained on a protected computer within the meaning of the CFAA. Compl. ¶ 99; 18 U.S.C. § 1030(e)(2)(B) (defining "protected computer" as a computer "which is used in or affecting interstate or foreign commerce or communication"); *see also Consumer Source Holding, Inc.*, 2014 WL 2967942, at *7. John Doe knowingly and intentionally accessed Acme Billing's domain name management account on a protected

computer without authorization and thereby obtained information from the protected computer in a transaction involving an interstate or foreign communication. Compl. ¶¶ 100, 121; 18 U.S.C. § 1030(a)(2)(C). Further, John Doe knowingly and with an intent to defraud accessed Acme Billing's domain name management account on a protected computer without authorization and obtained information from the computer, which John Doe used to further a fraud and obtain something of value. Compl. ¶¶ 100-106, 121; 18 U.S.C. § 1030(a)(4). Finally, John Doe intentionally accessed Acme Billing's domain name management account on a protected computer without authorization, and, as a result of such conduct, caused damage and loss. Compl. ¶¶ 103, 121; 18 U.S.C. § 1030(a)(5)(C).

This Court recently held in a similar case that "hijacking plaintiff's domain name accounts" constitutes a violation of the CFAA. *Consumer Source Holding, Inc.*, 2014 WL 2967942, at *7-8. The facts of *Consumer Source Holding* are analogous to the present case. In that case, the Doe Defendants, who were believed to reside in China, operated under aliases and unlawfully transferred control of plaintiff's domain names away from the plaintiff. The court found that defendants' conduct had resulted in harm to plaintiff:

> As a result, the ownership and contact information associated with plaintiff's brands and websites have been misrepresented, plaintiff's customer information has been put at risk, plaintiff has lost control over its websites and their functionality, spent resources investigating defendants' unauthorized access, and suffered damage to its brands, goodwill, and reputation.

*Id.* Thus, the court concluded that defendants had violated the CFAA.

Likewise, here, John Doe intentionally and without authorization accessed Acme Billing's domain name management account and transferred control of the Domain Names away from Acme Billing. Moreover, as a result of John Doe's unauthorized conduct, Acme Billing's

e-commerce websites have been disabled, and Acme Billing has suffered damage to its goodwill and reputation. Thus, the facts of this case support a finding that John Doe violated the CFAA.

Computer hacking and theft of intellectual property by persons based in China has become a significant problem for American businesses. (Compl. ¶ 93). Recently, domain name theft in particular is threatening businesses. (*Id.* ¶ 96). The present case and *Consumer Source Holding* are just two examples of this ever-growing problem. Holding hackers like John Doe accountable for their unlawful conduct under the CFAA is an important method of preventing further domain name theft.

### D.     The Domain Names Should Be Transferred to Acme Billing.

The ACPA provides that the remedy for an *in rem* proceeding is either the forfeiture or cancellation of the domain names or the transfer of the domain names to the owner of the mark. 15 U.S.C. § 1125(d)(2)(D)(i). The domain name registry for each of the Defendant Domain Names is maintained by VeriSign, which is located within this judicial district and thus subject to the Court's jurisdiction. Accordingly, the Court may properly enter a default judgment and order the .com and .net domain name registry, and any relevant domain name registrars, to transfer ownership of the Domain Names to Plaintiff. S*ee United Press Int'l, Inc.*, No. 1:13-CV-807 TSE/TCB, at 14 (E.D. Va. Oct. 18, 2013).

Additionally, injunctive relief is proper in this case under the CFAA. This Court recently granted injunctive relief in the form of permanently transferring ownership and control of the domain names back to the plaintiff under the CFAA. *Consumer Source Holding, Inc.*, 2014 WL 2967942, at *8. Additionally, in another case involving the CFAA, a district court granted injunctive relief and ordered the transfer of the domain names to plaintiff. *Combs v. Doe*, No. C10-1120 HRL, 2011 WL 738052, at *3 (N.D. Cal. Feb. 23, 2011), *adopted by* No. C10-1120

HRL (N.D. Cal. Mar. 14, 2011). There, the court concluded that a permanent injunction was appropriate "[i]n light of defendants' failure to appear in his [sic] action or relinquish control over the accounts[.]" *Id.* John Doe's intentional and unauthorized access of Acme Billing's domain name management account has resulted, and will continue to result, in irreparable harm and has exposed Acme Billing to substantial damages and loss. Compl. ¶¶ 122-23. Thus, Acme Billing has no adequate remedy at law (*id.* ¶ 123), and injunctive relief is proper.

## IV. CONCLUSION

For the foregoing reasons, Acme Billing respectfully requests that the Court grant this Motion for Default Judgment and order that the Domain Names should be transferred to Acme Billing.

Dated: December 30, 2014       By:     /s/ Attison L. Barnes, III
                                       Attison L. Barnes, III (VA Bar No. 30458)
                                       David E. Weslow (*pro hac vice*)
                                       WILEY REIN LLP
                                       1776 K St. NW
                                       Washington, DC 20006
                                       (202) 719-7000 (phone)
                                       (202) 719-7049 (fax)
                                       abarnes@wileyrein.com
                                       dweslow@wileyrein.com

                                       *Counsel for Plaintiff*
                                       *Acme Billing Company*

## **CERTIFICATE OF SERVICE**

I, Attison L. Barnes, III, hereby certify that on December 30, 2014, I electronically filed the foregoing by using the CM/ECF system.  I also sent copies to the registrants of the domain names at the postal and email addresses provided by the registrants to the registrar of the aij.com, hie.com, sjs.com, gy.net, 7204.com, fjd.com, iiw.com, xjn.com, 4213.com, 8674.com, hbu.com, pwp.com, xpe.com, and 7417.com domain names:

songyu min
pudong donglulu 2000 nong 4-901, shang hai shang hai 201206
yumiren1210@hotmail.com

shenzhouyibai
guangdonghuizhou, Huizhoushi, Guangdong 516000 China
zhoukk8899@gmail.com

MillerCHOU
No7 DaQiao Southeast Road, nan jing shi jiang su 210001 China
miller.chou@gmail.com

liuming
wulidajie, Zunyishi Guizhou 563000 China
mkrules5u@gmail.com

wanghua
jin san da dao, Ningboshi Zhejiang 362400 China
qq188447286@sohu.com

wangsushu
tianjinshijinghaixian, tian jin tian jin 300000
seezi@163.com

Guodajiang
ShangHai Beijing eastRoad668 G550, shang hai shang hai 200000 China
saleic@qq.com

Xiamen eName Network Co, Ltd
zhen zhu wan ruan jian yuan, Xiamenshi Fujian 361000 China
hz5g2gayz@enamewhois.com

/s/ Attison L. Barnes, III
Attison L. Barnes, III, Esq.
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Tel:  (202) 719-7000
Fax:  (202) 719-7049
abarnes@wileyrein.com

*Counsel for Plaintiff*
*Acme Billing Company*

18