IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ACME BILLING COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 1:14-cv-1379-LO-TRJ |
| JOHN DOE, | ) ) ) |
| Defendant. | ) ) ) |

**REPORT AND RECOMMENDATION**

This matter is before the court on plaintiff Acme Billing Company's ("Acme Billing") motion for default judgment (no. 12) for the unlawful transfer of domain names aij.com, hie.com, sjs.com, gy.net, 7204.com, fjd.com, iiw.com, xjn.com, 4213.com, 8674.com, hbu.com, pwp.com, xpe.com, and 7417.com (collectively, the "Domain Names"). Upon consideration of the record, the magistrate judge makes findings as follows and recommends that default judgment be entered in plaintiff's favor.

**I. Introduction**

On October 21, 2014, Acme Billing filed a complaint seeking in part the transfer of the Domain Names to Acme Billing for violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(2).[1] Acme Billing sent copies of the complaint and notice of its intent to proceed *in rem* to the postal and email addresses included in the Domain Names' registration records pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa). Weslow Decl. 1 ¶ 6 & Attach. 1, No. 5-1. On November 5, 2014, Acme Billing filed a Motion for Service by

---

[1] Plaintiff also alleges a claim, in the alternative, under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and seeks identical relief for this violation in its motion for default judgment. Because the magistrate judge recommends awarding plaintiff relief under the ACPA and because there is no personal jurisdiction over "John Doe" to allow relief under the CFAA, I do not address plaintiff's alternative claim.

Publication, which this court granted on November 10, 2014. Nos. 4, 8. Pursuant to this court's order and 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb), Acme Billing published a copy of the order, within fourteen days of its entry, in *The Washington Times*. Weslow Decl. 2 ¶ 5 & Ex. A, No. 9-1. The order further stated that any answer or response to the complaint was due within twenty days of the date of publication. No answer or other pleading was timely filed in response to the complaint and, on December 24, 2014, the Clerk entered the default of defendant John Doe, referring to "defendant Domain Names." No. 11.

Although 15 U.S.C. § 1125(d) clearly distinguishes between an *in personam* action against a wrongdoer subject to the court's personal jurisdiction (subsection (d)(1)) and an *in rem* action against the wrongly appropriated domain names when the wrongdoer who misappropriated them is not subject to personal jurisdiction (subsection (d)(2)), plaintiff here has inexplicably chosen to file a complaint which is in form an *in personam* action where the *in rem* form is needed. The magistrate judge inadvertently failed to notice this when issuing the order of publication (no. 8).

Nevertheless, although "John Doe" is the only captioned "defendant," the complaint, the order of publication, the Clerk's entry of default, and the motion for default judgment all refer in their text to "defendant Domain Names."

The magistrate judge finds that plaintiff has given constitutionally adequate notice to the registrant(s) of the Domain Names, and that the allegations of the complaint are sufficient to justify the relief sought in all respects save for form. Therefore, to avoid unnecessarily exaltation of form over substance, the magistrate judge recommends that the complaint be treated as one *in rem*, and the balance of this report and recommendation proceeds on that assumption.

## II. Fact Summary

The following facts are established by Acme Billing's complaint and exhibits in support of default judgment.

Acme Billing is a corporation organized and existing under the laws of Florida with its principal place of business in Florida. Compl. ¶ 3, No. 1. Acme Billing registered the Domain Names and used them to operate ecommerce websites as part of its online retail and ecommerce business. Compl. ¶¶ 3, 30 & Exs. O-AC. Over the past five years, Acme Billing has purchased numerous such domain names to host ecommerce websites and information pages. Compl. ¶ 33. Its websites sell products such as handbags, watches, shoes, writing instruments, crystal, sunglasses, and luxury accessories and provide online services and links in the area of real estate, travel, shopping, lifestyle, retail services, and videos. Compl. ¶¶ 31-32. Acme Billing often uses three-letter and four-number domain names, such as the Domain Names, as initialisms and acronyms for its products, services, and website. Compl. ¶ 34. These letter and number strings are the frequent subject of consumer internet searches and are therefore valuable to plaintiff as ecommerce site names. *Id.*

Acme Billing maintains a domain name management account with its domain name registrar GoDaddy for control and management of these domain names. Compl. ¶ 98. The account is maintained on a protected computer requiring Acme Billing's username and password to gain access. Compl. ¶ 99. On or about August 4, 2014, defendant John Doe, a person or persons of unknown identity located in China, gained unauthorized access to Acme Billing's domain name management account. Compl. ¶¶ 18, 100. John Doe altered the registration records of thirty-five domain names owned by Acme Billing thereby gaining control over and disabling all associated ecommerce websites. Compl. ¶¶ 100, 103. The domain name registrar,

GoDaddy, advised Acme Billing that the domain names had been transferred to another domain name management account with GoDaddy and then transferred from this GoDaddy account to a domain name registrar based in China, eName Technology Co., Ltd.  Compl. ¶ 102.  After Acme Billing provided GoDaddy with information on and documentation of its rightful ownership of the thirty-five domain names, GoDaddy was able to retrieve and return twenty-one of the stolen domain names.  Compl. ¶¶ 104-105.  However, GoDaddy advised Acme Billing that the Chinese domain name registrar refused to return the remaining fourteen domain names, which are the subject of the instant action.  Compl. ¶ 105.  John Doe is now offering these fourteen domain names for sale.  Compl. ¶ 106.

Through the instant action, plaintiff raises an ACPA claim for the illegal transfer of the Domain Names from its registrar, GoDaddy, to a domain name registrar located in China, effectively preventing Acme Billing's use and control of its marks and associated ecommerce websites.  As relief, plaintiff requests the court order registry VeriSign, Inc., to return control of the subject domain names to plaintiff Acme Billing.  On information and belief, the names—songyu min, shenzhouyibai, MillerCHOU, liuming, wanghua, wangsushu, and Guodajiang—presently listed in the domain name registration records for the Domain Names and their corresponding addresses are fictitious and aliases for defendant John Doe.  Compl. ¶¶ 19-20.  In this situation, therefore, neither plaintiff nor the court can be sure who is the new registrant of the Domain Names.  Whoever that person or entity may be, referred to hereafter simply as Registrant, the current registrant has been served by publication pursuant to the ACPA and is in default.

### III. Jurisdiction and Venue

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law. There is *in rem* jurisdiction over the Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A), as the Domain Names violate plaintiff's trademarks and plaintiff cannot obtain personal jurisdiction over Registrant, who appears to be located outside of the United States and does not appear to have sufficient contacts to confer jurisdiction. Venue is proper pursuant to 15 U.S.C. § 1125(d)(2)(A) and (C) because the registry for the Domain Names, VeriSign, Inc., is located within this court's judicial district. And, as described above, plaintiff has properly perfected service by complying with all of the requirements set forth in 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb).

### IV. Standard

Default judgment is appropriate if the well-pled allegations of the complaint establish plaintiff's entitlement to relief and a defendant—or, here, a registrant of domain names—has failed to plead or defend within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.,* 616 F. Supp.1001, 1002 (E.D. Va. 1985); Fed. R. Civ. P. 55. By defaulting, a defendant or registrant admits plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969, 971 (4th Cir. 1926) (default admits well-pled facts). Because Registrant has defaulted, the facts set forth in plaintiff's complaint are deemed admitted.

## V. Discussion and Findings

The magistrate judge finds that the well-pled allegations of fact in Acme Billing's complaint establish that Registrant's ownership and use of the Domain Names violate the Anti-Cybersquatting Consumer Protection Act. Accordingly, the magistrate judge finds that the complaint should be treated as one *in rem* against the Domain Names as defendants and that plaintiff is entitled to the relief requested in its motion for default judgment, the transfer of the defendant Domain Names to Acme Billing.

As a preliminary matter, the ACPA protects both registered marks as well as unregistered common-law marks. Acme Billing, as the named registrant of defendant Domain Names, used them in commerce in association with the provision of products and services to internet consumers thereby establishing common law trademark protection in the corresponding trademarks.[2] Therefore, in this default judgment context the magistrate judge finds that plaintiff possesses common-law trademark rights in distinctive marks that correspond with and are identical to the defendant Domain Names.

As the owner of a protected mark, to establish an anticybersquatting violation plaintiff must allege that Registrant "(i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264 (4th Cir. 2001). Courts consider a non-exhaustive list of nine factors to determine bad faith.[3] 15

---

[2] Acme Billing also registered its HIE mark on the Principal Trademark Register (U.S. Reg. No. 3899615), forming part of the defendant domain name HIE.com. Compl. ¶ 39 & Ex. P. Acme Billing's federal registration of the HIE mark constitutes *prima facie* evidence of its validity and distinctiveness. 15 U.S.C. § 1057(b); *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001).

[3] The relevant portion of the statute reads as follows:
A court may consider factors such as, but not limited to–

U.S.C. § 1125(d)(1)(B)(i); *see Venetian Casino Resort, LLC v. Venetiangold.Com*, 380 F. Supp. 2d 737, 740 (E.D. Va. 2005). The magistrate judge applies this two-pronged test to the well-pled allegations of fact in plaintiff's complaint to determine whether, under the ACPA, Registrant violated plaintiff's rights in the defendant Domain Names.

Under the second factor—registers or traffics in a domain name identical or similar to a distinctive mark—Registrant transferred and registered without authorization plaintiff's domain names, which are identical to plaintiff's distinctive marks. Therefore, this element is easily satisfied. Under the first factor—registered with a "bad faith intent to profit" from the mark—the magistrate judge recommends a finding that Registrant transferred and registered the

---

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.
15 U.S.C. § 1125(d)(1)(B)(i).

defendant Domain Names with bad-faith intent to profit from plaintiff's trademark for the following reasons.

First, defendant Domain Names do not incorporate either Registrant's name or intellectual property rights and are registered under false contact information, satisfying three of the bad-faith factors. Second, Registrant has never used the domain names, or engaged in bona fide commercial or fair use of the trademarks in a site accessible under the domain names, and is now offering to sell them back to plaintiff for financial gain, thereby satisfying a further three bad-faith factors. Finally, as to the remaining bad-faith factors, by transferring plaintiff's domain names without authorization Registrant acquired multiple domain names knowing them to be identical to plaintiff's distinctive marks and prevented plaintiff from exercising control over its domain names causing source confusion as to plaintiff's associated commercial websites.

Furthermore, Registrant engaged in bad faith by failing to correct the fraudulent transfer after receiving plaintiff's notice of alleged violations and theft of its domain names. By failing to respond to plaintiff's complaint, Registrant concedes that it lacks any right or legitimate interest in either plaintiff's marks or its domain names. *See Agri-Supply Co., Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 663 (E.D. Va. 2006) (finding bad faith and granting default judgment where plaintiff alleged that defendant had "registered confusingly similar domain names in bad faith and with no noncommercial or fair purpose for doing so").

Based on the foregoing, the magistrate judge finds that the well-pled facts of the complaint establish that Registrant's purported ownership and use of the defendant Domain Names violates Acme Billing's rights under the ACPA. In an *in rem* cybersquatting action, plaintiff's remedies are limited to either the transfer of the domain names to the owner of the mark or the forfeiture or cancellation of the domain names. 15 U.S.C. § 1124(d)(2)(D)(i); *see*

*Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610 (E.D.Va. 2003) (discussing a court's power to transfer or cancel a domain when the location of the registry is within that judicial district). Here, the defendant Domain Names' registry, VeriSign, Inc., is located within this judicial district and plaintiff has properly perfected service under the ACPA. Accordingly, the Court may properly enter a default judgment and order the .com and .net domain name registry, and any relevant domain name registrars, to transfer ownership of the defendant Domain Names to Acme Billing. *See United Press Int'l, Inc.*, No. 1:13-CV-807 (E.D. Va. Oct. 18, 2013).

## VI. Recommendation

The magistrate judge recommends that default judgment be entered *in rem* against defendant domain names aij.com, hie.com, sjs.com, gy.net, 7204.com, fjd.com, iiw.com, xjn.com, 4213.com, 8674.com, hbu.com, pwp.com, xpe.com, and 7417.com in favor of plaintiff Acme Billing Company and that ownership and control of defendant domain names be transferred to plaintiff.

## VII. Notice

Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

April 28, 2015
Alexandria, Virginia